IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JASON N. LESTER,<br><br>    Plaintiff,<br><br> vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | CV 16–78–M–JCL<br><br>ORDER |

Plaintiff Jason Lester brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-434. Lester alleges disability since July 10, 2010. His application was denied initially and on reconsideration, and he requested a hearing which took place on July 9, 2014. Lester appeared with counsel at his hearing, and on November 6, 2014, the ALJ issued a decision finding that Lester was not disabled within the meaning of the Act. The Appeals Council denied Lester's subsequent request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court

pursuant to 42 U.S.C. § 405(g).

Lester was 42 years old at the time of his alleged onset date, and 47 years old at the time of the ALJ's decision.

## I. Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court

"may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. <u>Burden of Proof</u>

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed

impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

The ALJ found at step one that Lester met the insured status requirements of the Act through June 30, 2014, and had not engaged in substantial gainful activity during the period from his alleged onset date through his date last insured. At step two, the ALJ found that Lester had the following severe impairments: lumbar degenerative disc disease, status post-multiple knee injuries with osteoarthritis, polyarthritis, status post-left shoulder injuries, bilateral carpal tunnel syndrome status post release surgeries, depression, anxiety, and post-traumatic stress disorder (PTSD). The ALJ concluded at step three that Lester did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. The ALJ also found that

while Lester's impairments could reasonably be expected to cause the alleged symptoms, his testimony as to the intensity, persistence, and limiting effects of those symptoms was not entirely credible. The ALJ found that Lester could perform a range of light work, and that there were jobs in significant numbers in the national economy that he could perform, including light work as a general office clerk or shipping order clerk, and sedentary work as information clerk.

## A. Credibility

Lester argues the ALJ did not provide sufficiently clear and convincing reasons for discrediting his testimony. The Court agrees.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). At the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citations omitted). Where, as here, the ALJ finds the claimant has met this evidentiary threshold and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at

1036.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).  The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'"  *Brown-Hunter*, 806 F.3d 493 (*quoting Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

In addition, the court is "constrained to review the reasons the ALJ asserts."  *Brown-Hunter*, 806 F.3d at 492.  This means the court "may not take a general finding" by the ALJ "and comb the administrative record to find specific" evidence in support of that finding.  *Brown-Hunter*, 806 F.3d at 494.  Rather, the ALJ is responsible for identifying the testimony [he] finds not credible, and linking "that testimony to the particular parts of the record supporting [his] non-credibility determination."  *Brown-Hunter,* 806 F.3d at 494.

Here, the ALJ summarized Lester's testimony and then identified two reasons for finding him not credible.  First, he found that Lester "engages in activities that are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations."  (Doc. 7-2, at 24).  The ALJ pointed out

that although Lester reported having difficulty carrying out daily tasks and dealing with people in social settings, he could tend to his personal care needs, complete household chores, and visit with family and neighbors two or three times a week. While this may well have been a legitimate reason for questioning Lester's credibility, it was not enough, by itself, to sustain the ALJ's adverse credibility finding.

The only other reason provided by the ALJ for discounting Lester's testimony was that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." (Doc. 7-2, at 24). While a lack of objective "medical evidence cannot form the sole basis for discounting pain testimony," it is one factor that an ALJ may consider in evaluating a claimant's credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The problem here is that the ALJ made no effort to identify which portions of Lester's testimony he found not credible or "link that testimony to the particular parts of the record supporting [his] non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. While the ALJ summarized the medical evidence, he did not identify which portions of Lester's testimony he found not credible and did not identify any specific inconsistencies between Lester's allegations and the objective medical evidence. The Ninth Circuit has made clear

"an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." *Treichler v. Comissioner*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted). The ALJ's general statements regarding the insufficiency of the medical evidence fall short of the specificity required by the Ninth Circuit.

Because the ALJ did not identify which portions of Lester's testimony he found not credible or link that testimony to the medical records, the ALJ's statement regarding a lack of objective medical evidence was not a clear and convincing reason for discounting Lester's credibility. Absent sufficiently specific reasons, the court is unable to conduct a meaningful review of the AlJ's credibility determination. *See Brown-Hunter*, 806 F.3d at 492 (explaining that if an ALJ fails to specify his or her reasons for finding claimant testimony not credible, the "error will usually not be harmless"). Consequently, the ALJ's failure to properly reject this evidence cannot be viewed as harmless. Because the ALJ failed to provide clear and convincing reasons supported by substantial evidence for finding Lester's subjective allegations not credible, this case must be remanded.

**B. Medical Opinions**

Lester argues the ALJ erred by stating that he was giving great weight to examining physician Dr. Victor Davis's opinion, but failing to incorporate all of the limitations he identified into the residual functional capacity assessment.

The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). An ALJ may reject the uncontradicted opinion of an examining physician only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To discount the controverted opinion of an examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830.

Dr. Davis examined Lester in January 2013 and performed a comprehensive physical examination. (Doc. 7-8, at 212-16). Dr. Davis found that Lester had "clear limitations of his work ability due to likely osteoarthritis in his knees and degenerative disc disease of his lumbar spine." (Doc. 7-8, at 215). He determined that Lester was unable to kneel, squat, bend, or climb stairs, could lift up to 50 pounds, could not "walk more than about 100 feet at a time," and might be able to do "sedentary types of work, which would not require standing over 30 minutes at a time or require a great deal of walking..." (Doc. 7-8, at 215).

The ALJ gave Dr. Davis's opinion "great weight," finding that it was "consistent with the reliable evidence of record and based on a thorough and precise examination grounded on trusted objective techniques." (Doc. 7-2, at 27). Although the ALJ stated he was giving Dr. Davis's opinion great weight, he found that Lester could occasionally climb stairs, walk for 30 minutes at a time, and stand for two hours at a time. (Doc. 7-2, at 27). The Commissioner concedes that the ALJ did not incorporate all of the limitations set forth by Dr. Davis into the residual functional capacity assessment, but argues any error was harmless for two reasons.

First, the Commissioner points out that although the ALJ found contrary to Dr. Davis's opinion that Lester could occasionally climb stairs, none of the representative jobs the ALJ found Lester capable of performing requires the ability to climb stairs. The Commissioner is correct that as described in the Dictionary of Occupational Titles (DOT), the representative jobs of general office clerk, information clerk, and shipping order clerk do not require the ability to climb stairs. DOT 209.562-010; DOT 237.367-022; DOT 219.367-030. To the extent the ALJ erred by finding Lester could occasionally climb stairs, the Court agrees that any error was harmless. See *Brown-Hunter*, 806 F.3d at 494 (error is

harmless if it is inconsequential to the ultimate nondisability determination).

Second, the Commissioner argues any error on the ALJ's part in failing to adopt the standing and walking limitations identified by Dr. Davis was harmless error because the ALJ included a sit/stand/walk option in the residual functional capacity assessment and hypothetical question to the vocational expert. The ALJ found that Lester "requires the opportunity to alternate between walking, standing, and sitting with alternating defined as doing one of those activities and changing to doing one of the other two activities or taking a short break and returning to the same activity." (Doc. 7-2, at 22). Even if this sit/stand/walk option did not adequately account for Dr. Dr. Davis's opinion, the Commissioner points out that the ALJ also presented the vocational expert with an alternative hypothetical that included restrictions to 10 minutes of walking and 30 minutes of standing at one time with a similar sit/stand/walk option. (Doc. 7-2, at 97-98). The vocational expert identified three representative sedentary jobs in response to the alternative hypothetical. (Doc. 7-2, at 98-99).

Whether the sit/stand/walk option adequately accounted for the standing and walking limitations identified by Dr. Davis is not entirely clear. Even assuming it did, however, the ALJ erred because he did not ask the vocational

expert about any possible conflicts between her testimony and the job descriptions set forth in the Dictionary of Occupational Titles. SR 00-4p governs the use of vocational expert evidence in disability determinations, and states that "[o]ccupational evidence provided by a VE...generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, * 2. To comply with SR 00-4p, the ALJ must ask the vocational expert whether her testimony is consistent with the DOT. *Massachi v. Astrue,* 486 F.3d 1149, 1152-53 (9th Cir. 2007). If "there is an apparent unresolved conflict between VE...evidence and the DOT," the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE" testimony to support a disability determination. SSR 00-4p, *2.

Here, the ALJ erred by not asking the vocational expert whether her testimony was consistent with the DOT. Such error may be considered harmless, however, if no conflict exists or the vocational expert adequately explains any potential conflicts. See *Massachi v. Astrue,* 486 F.3d 1149, 1154 n. 9 (9th Cir. 2007).

The DOT does not address sit/stand/walk options like the one adopted by the ALJ here, and SSR 83-12 directs that "[i]n cases of unusual limitation of

ability to sit or stand, a [vocational expert] should be consulted." SSR 83-12, *4. The Ninth Circuit has not definitively resolved the question of whether there is an apparent conflict between the DOT and a vocational expert's testimony that a claimant who requires a sit/stand/walk option can perform certain jobs. See *Dewey v. Colvin*, 650 F. App'x. 512, 514 (9th Cir. 2016) (finding no conflict between sit/stand option and DOT because "the DOT is silent on whether the jobs in question allow for a sit/stand option"); *Buckner-Larkin v. Astrue*, 450 F. App'x. 626, 628-29 (9th Cir. 2011) (finding that "conflict" between sit/stand option and DOT was adequately addressed by the vocational expert based on the vocational expert's research and experience).

District courts within the Ninth Circuit are split on the issue. See e.g., *Berry v. Berryhill,* 2017 WL 2829621 *6 (D. Ore. June 30, 2017) (finding that vocational expert testimony regarding a sit/stand option creates an apparent conflict with the DOT); *Nash v. Berryhill*, 2017 WL 173418 *2 (C.D. Cal. Apr. 28, 2017) (finding that ALJ's failure to ask vocational expert about conflict between a sit/stand option and the DOT was not harmless because the vocational expert did not explain why the jobs she identified could accommodate a sit/stand option); *Curry v. Berryhill*, 2017 WL 1404312 *3 (D. Nev. Apr. 18, 2017) (finding there is an apparent conflict between the DOT and vocational expert

testimony regarding jobs that will allow for a sit/stand option *Edmonds v. Berryhill*, 2017 WL 1217081 *4 (C.D. Cal. March 31, 2017) (finding no conflict between vocational expert's testimony about a claimant who requires a sit/stand option and the DOT); *Laufenberg*, 2016 WL 6989756 *8 (C.D. Cal. Nov. 29, 2016) (finding that because DOT is silent on a sit/stand option, no actual conflict exists between the DOT and a vocational expert's testimony about such a requirement).

In light of this split, it is reasonable to conclude under the circumstances that there was an apparent conflict between the ALJ's testimony that Lester could perform the representative jobs she identified and the DOT, and that the ALJ erred by not obtaining a reasonable explanation for the apparent conflict from the vocational expert.

An ALJ's failure to ask whether the vocational expert's testimony about a sit/stand option is consistent with the DOT may be considered harmless error if the vocational expert nonetheless confirmed that his or her testimony was consistent with the DOT or addressed the sit/stand option and the extent to which it would erode the occupational base of the representative jobs identified. See e.g. *Hirschy v. Commissioner of Soc. Sec.*, 2012 WL 996527 *11 (E. D. Cal. Mar. 23, 2012) (ALJ's error in not asking the vocational expert whether there a conflict with the

DOT was harmless because the vocational expert addressed the sit/stand option and eroded available jobs accordingly).

Here, however, the vocational expert did neither of these things. She did not confirm that her testimony was consistent with the DOT and did not address the sit/stand/walk option in her testimony.  Moreover, the vocational expert did not explain whether such an option would erode the occupational base of the representative jobs she identified.

In his hearing decision, the ALJ acknowledged that the vocational expert's testimony regarding the sit/stand/walk option conflicted with the DOT. (Doc. 7-2, at 31).  In an attempt to resolve that apparent conflict, the ALJ found that the vocational expert "based her testimony concerning this limitation on personal work experience and expertise, which a foundation for was appropriately laid out during the hearing."  (Doc. 7-2, at 31).  But presumably every vocational expert testifies based on his or her experience.  While it is true that a vocational expert's "recognized expertise provides the necessary foundation for his or her testimony,"[1] the ALJ must still elicit testimony explaining any apparent conflict between the vocational expert's testimony and the DOT.  Instead of asking the vocational

---

[1] *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

expert about what the ALJ identified as an apparent conflict, the ALJ simply created his own explanation. This was error.

C. **Remand**

As discussed above, remand is required because the ALJ improperly evaluated Lester's credibility and gave great weight to Dr. Davis's opinion without incorporating all of the limitations he identified into the residual functional capacity assessment.[2] Because the ALJ did not ensure that the vocational expert's testimony was consistent with the DOT, the Court cannot conclude that the sit/stand/option adopted by the ALJ adequately accounted for the limitations set forth in Dr. Davis's opinion or that the ALJ's failure to incorporate those limitations into the residual functional capacity assessment was harmless error.

According to the Ninth Circuit, the Court should credit evidence as true and remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant

---

[2] Having so concluded, the Court need not consider Lester's argument that the ALJ failed to consider vocational rehabilitation records and did not give enough weight to Dr. Patricia Webber's opinion.

disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

On remand, the ALJ should re-evaluate Lester's subjective symptoms, and either incorporate the limitations identified by Dr. Davis into the residual functional capacity assessment or provide sufficient reasons for rejecting them. The ALJ should also ensure that the vocational expert's testimony is consistent with the DOT and address the issue in compliance with SSR 00-4p.

### IV. Conclusion

For the reasons set forth above,

IT IS ORDERED that the Commissioner's decision is reversed. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 22nd day of August, 2017

_Jeremiah C. Lynch_
Jeremiah C. Lynch
United States Magistrate Judge